IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 00-CV-2555-JLK

**PAMELA CLIFTON**,

Plaintiff

v.

**NURSE ILONA EUBANK, in her individual capacity;**
**OFFICER DAWN ANAYA, in her individual capacity; and**
**OFFICER IRA WILKS, in his individual capacity,**

Defendants.

---

MEMORANDUM OPINION AND ORDER

---

Kane, J.

This civil action is brought under 42 U.S.C. § 1983  for violations of the Eighth

and Fourteenth Amendment rights of Pamela Clifton, an inmate of the Colorado

Department of Corrections Women's Correctional Facility in Canon City, Colorado, who

seeks declaratory relief and damages against defendants, Nurse Ilona Eubanks, Officer

Dawn Anaya, and Officer Ira Wilks.  The action arises out of the stillbirth of Plaintiff

Clifton's fetus.  Clifton claims that the deprivation of her constitutional rights, in the form

of improper medical care received in prison,  resulted in the loss of her fetus.  Defendants

filed a Motion for Summary Judgment, arguing the suit is barred by the Prison Litigation

Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, which states, in part, "No Federal civil

action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing

of physical injury."  42 U.S.C. § 1997e(e).  Plaintiff has responded with a Motion to

Recognize the Constitutional Rights of Prison Inmates, asserting that if the PLRA bars

her suit it should be found unconstitutional.  Both motions are pending.


## I. Background.

For purposes of the summary judgment motion, I assume the following facts to be

true unless otherwise stated.  On the morning of December 25, 1998, Pamela Clifton, an

inmate housed by the Colorado Department of Corrections at the Women's Correctional

Facility in Canon City, Colorado, went into labor.  Compl. at ¶ 1; *and* Clifton Dep., p. 19

at ll. 1-3.  At the time, Clifton was approximately eight months pregnant.  Clifton Dep., p.

36, ll. 5-7.  Four days earlier, on December 21, 1998, at an appointment with Dr. Mark

Sindler, Sindler had reported that Clifton's pregnancy was proceeding normally.  Clifton

Dep., p. 35, ll. 3-9.

Upon experiencing contractions, Clifton told Defendant Anaya, a guard at the

correctional facility, that she was in labor and needed medical assistance.  Compl. at ¶ 1.

Defendant Anaya did not provide Clifton with medical assistance at that time, but instead

sent Clifton back to her unit.  *Id.*; *and* Clifton Dep. p. 19, ll. 2-7.  At lunchtime, Clifton

then told Defendant Wilks that she was in labor and needed help.  Compl. at ¶ 1; *and*

Clifton Dep., p. 25, ll. 15-20.  Defendant Wilks also declined to provide Clifton with

medical assistance and told Clifton to return to her unit.  Compl. at ¶ 1; *and* Clifton Dep.,

p. 26, ll. 1-3.  Upon Clifton's third request for medical assistance, another prison guard

sent Clifton to the facility's medical unit.  Compl. at ¶ 1; *and* Clifton Dep., p. 29, ll. 2-5.

At the facility's medical unit, Defendant Nurse Eubanks examined Clifton.

Compl. at ¶ 1.  Nurse Eubanks reported finding no evidence that Clifton's water had

broken.  *Id*.  Clifton asked Defendant Eubanks to send her to the hospital despite the

absence of amniotic fluid because with prior pregnancies she had required assistance with

smooth induction of labor and breaking her water.  *Id*.  However, Nurse Eubanks called

Clifton's labor a "false alarm" and sent her back to her unit rather than to the hospital.

*Id*.  During the examination, Nurse Eubanks did not use a fetal heart monitor to evaluate

the status of Clifton's fetus, apparently because she did not know how to use the monitor.

*Id*.

The next day, another prison guard noticed Clifton's distress and sent her to the

medical unit.  *Id*.  At this point, Clifton reported sensing no fetal movement.  *Id*.  She was

sent from the prison to a hospital, where it was determined that her fetus was dead.  *Id*.

Clifton was required to undergo a stillbirth.  *Id*.  Clifton claims that proper treatment,

which was denied by the defendants, would have resulted in the healthy, live birth of her

child.  *Id*.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, evidence

is viewed, and reasonable inferences may be drawn therefrom, in the light most favorable

to the non-moving party, in this case the Plaintiff.  *Simms v. Oklahoma ex rel. Dep't of

Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Defendants, as the moving parties, have the initial burden of showing the absence of a

genuine issue of material fact and that they are entitled to judgment as a matter of law.

*Id.*  If Defendants carry this burden, then the burden of production shifts to Plaintiff to

"set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);

*see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  At least one court has

held that on summary judgment motions regarding claims potentially barred by the

PLRA's physical injury requirement where physical injuries could have resulted from the

deprivations alleged, leave to amend a prisoner's complaint to include a statement of

physical injuries suffered is warranted.  *See Mitchell v. Horn*, 318 F.3d 523, 534 (3d Cir.

2003) (leave to amend prisoner's mental and emotional injury complaint to include

statement of physical injuries he suffered as result of deprivation of food, drink, and sleep

for four days was warranted for purpose of meeting physical injury requirement of Prison

Litigation Reform Act (PLRA), as physical injuries could have resulted from deprivations

alleged).

### III. Merits

4

Plaintiff's claims survive summary judgment because the PLRA's physical injury requirement does not bar a prisoner's claim for damages for violations of her constitutional rights when she alleges a deprivation of medical care that resulted in the loss of her fetus.  The relevant section of the PLRA, entitled "Limitations on Recovery," states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Defendants argue the loss of a fetus requiring the mother to undergo a stillbirth does not constitute a physical injury that satisfies the physical injury requirement of the PLRA.  The Plaintiff argues regardless of the presence or absence of physical injury attendant to undergoing a stillbirth, the PLRA should be deemed unconstitutional if it bars a claim in these circumstances.  I address both arguments in turn, positing that delayed labor, resulting in stillbirth, constitutes a physical injury to the mother sufficient to satisfy the PLRA's physical injury requirement, and, furthermore, regardless of the presence or absence of physical injury, the PLRA does not bar the constitutional claims of a woman who alleges improper medical care resulted in the death and stillbirth of her fetus.  Accordingly, Defendants' Motion for Summary Judgment is denied, and Plaintiff's Motion to Recognize the Constitutional Rights of Prison Inmates is moot.

**A.      The prolonged labor and stillbirth Plaintiff alleges she suffered satisfy the physical injury requirement of the PLRA.**

5

The PLRA provides no statutory definition for the term "physical injury."  42

U.S.C. § 1997e *et seq*.  Appeals courts confronting the issue have held that although a de

minimis showing of physical injury does not satisfy the PLRA's physical injury

requirement, an injury need not be significant to satisfy the statutory requirement.  *See*

*Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir. 2003) (surveying the authorities and finding

"the courts of appeals have read 1997e(e) to require a less-than-significant-but-more-than-

de minimis physical injury as a predicate to allowing the successful pleading of an

emotional injury."); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) ("for all claims to

which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that

need not be significant but must be more than de minimis"); *Harris v. Garner*, 190 F.3d

1279, 1286 (11th Cir. 1999) ("the physical injury must be more than de minimis, but need

not be significant"); *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) ("physical injury

required by § 1997e(e) must simply be more than de minimis"); *and Siglar v. Hightower*,

112 F.3d 191, 193 (5th Cir. 1997).  Physical pain, standing alone, is a de minimis injury

that may be characterized as a mental or emotional injury and, accordingly,  fails to

overcome the PLRA's bar; but, when paired with allegations of physical effects, physical

pain may support a claim under the PLRA.  *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir.

2005); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  To define the

contours of those more significant injuries that, standing alone, satisfy the PLRA, courts

have looked to principles of tort law.  *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-1323

(S.D. Ind. 1997), *aff'd*, 133 F.3d 459 (7th Cir. 1997).  While there may be some room for

debate about the degree to which the pain of prolonged labor and an attendant stillbirth constitute a "physical injury" for tort purposes, many holdings support the notion that experiencing prolonged labor and stillbirth constitutes a physical injury to the mother, and, thus, provide a sufficient basis for surmounting the prior physical injury showing requirement of the PLRA.

> **1.**    **Pain paired with allegations of more tangible physical effects, such as a mother's prolonged labor resulting in the death of her otherwise viable fetus, satisfy the PLRA's physical injury requirement.**

While a showing of physical injury may not be "de minimis," it need not be significant to survive the PLRA bar against claims for damages without a prior showing of physical injury. *See Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir. 2003). Accordingly, the Tenth Circuit has suggested that although allegations of physical pain alone may be insufficient to overcome the PLRA bar, when paired with allegations of more tangible physical effects, they state a valid claim. *Sealock v. Colorado*, 218 F.3d 1205, 1210 n.6 (10th Cir. 2000) ("assuming without deciding that physical pain constitutes 'mental or emotional injury' within the meaning of the [PLRA]," but holding that appellant satisfies the physical injury requirement with his prior showing of a heart attack). *See also Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (finding that prolonged chest pain, followed by a heart attack, formed the basis for a claim not for emotional injury, but for physical injury, and, thus, survived the PLRA bar). *But see Jarriett v. Wilson*, 414 F.3d 634, 641 (6th Cir. 2004) (assuming without deciding that physical pain is a mental or emotional injury and

that plaintiff's claims, when they alleged only pain associated with the moderate swelling of a toe that required no medical treatment, were insufficient to overcome the PLRA bar); *and Herron v. Patrolman #1*, 111 Fed. Appx. 710, 713 (5th Cir. 2004) (unpublished opinion) ("rough handling, which resulted in a temporary increase of pain in his already injured neck" did not constitute more than a de minimis physical injury to plaintiff). Furthermore, allegations that a plaintiff suffered a miscarriage are sufficient to establish a question for the fact-finder as to whether the plaintiff suffered a more significant physical injury sufficient to overcome the PLRA's bar. *Pool v. Sebastian County*, 418 F.3d 934, 943 (8th Cir. 2005).

Recovery for mental and emotional damages has been denied when the physical injury supporting the claim was de minimis, as when injuries included soreness and bruising of a prisoner's ear that lasted for three days after a correctional officer verbally abused the plaintiff and twisted his arm and ear. *Siglar v. Hightower*, 112 F.3d 191, 193-194 (5th Cir. 1997). A court has held headaches, insomnia, stress, and stomach anxiety are de minimis symptoms that do not constitute a physical injury sufficient to overcome the PLRA's bar. *Cannon v. Burkybile*, 2000 U.S. Dist. LEXIS 14139, *19 (N.D. Ill. Sept. 21, 2000). The seven-month delay of surgery for removal of tumors similarly has been held not to rise above the de minimis physical injury requirement when the plaintiff alleged the delay resulted in "anguish and worry" that the tumors might be malignant, but no physical effects. *Jones v. Sheahan*, 2000 U.S. Dist. LEXIS 14130, *22-23 (N.D. Ill. Sept. 22, 2000). Delayed receipt of HIV/AIDS medication also does not constitute a physical injury

8

when the plaintiff failed to allege that adverse health effects resulted from the delay.  *Leon v. Johnson*, 96 F. Supp. 2d 244, 248 (W.D.N.Y 2000).  The Third Circuit has held that allegations of the deprivation of food, sleep and drink for four days did not, in and of themselves, state a claim for physical injury.  *Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003).  However, the *Mitchell* court reasoned that because "physical injuries could result from such deprivation after four days," plaintiff, who had alleged the deprivations placed his "life and health in jeopardy,"  was entitled to an opportunity to amend his complaint. *Id*. at 534.

Identifying an injury that qualified as more than de minimis, the *Sealock* court held allegations of pain and suffering lasting several hours attendant to a heart attack were sufficient to satisfy the PLRA's statutory requirement of a prior showing of physical injury on a motion for summary judgment, even though the inmate did not show specific medical evidence of damage to his heart from his heart attack.  *Sealock*, 218 F.3d at 1210. The court reasoned, "Even if appellant failed to show that his heart was damaged by the delay ... we believe he has shown that his need was sufficiently serious to require prompt medical attention."  *Id*.  Accordingly, the allegations were sufficient to satisfy the PLRA's physical injury requirement.  *Id*. at 1210 n.6.  The court so held, even though the plaintiff did not allege that defendants caused the heart attack or any lasting physical injury, but, rather, merely that he experienced prolonged pain as a result of delayed medical care.  *Id*. at 1210.  The *Mata* court's holding concerning an inmate who suffered prolonged chest pain and, ultimately, a heart attack, reaffirmed *Sealock*.  *Mata*, 427 F.3d at 755. The

plaintiff in *Mata* reported experiencing chest pain to a prison nurse, but medical treatment was delayed for a full day, by which time the plaintiff had experienced a heart attack and irreversible damage to her heart. *Id*. at 750. "[T]here is no doubt on the record before us that Ms. Mata offered substantial evidence she suffered physical injury from her chest pains and that defendants' delay in providing proper care contributed to the injury." *Id*. at 755. Accordingly, the court found the plaintiff was suing for the physical pain she endured, not an emotional injury. *Id*.

In *Pool*, the plaintiff, who had been pregnant when she was imprisoned, alleged she experienced cramping and bleeding for four days, which she reported to prison officials but which went untreated. *Pool*, 418 F.3d at 938-939. The symptoms culminated in a miscarriage, necessitating surgery to remove the placenta. *Id.* at 939. In response to those allegations, the defendants presented the affidavit of a doctor who stated that "because Pool's miscarriage appears to have been caused by an abrupted placenta, the fetus was 'almost surely dead before the miscarriage occurred' [and that] 'a miscarriage is not a physical injury; instead it is a natural body function whereby the body rejects the fetus and results in no physical harm to the patient.'" *Id.* Nevertheless, the *Pool* court rejected the prison officials' argument in an interlocutory appeal that the PLRA's physical injury requirement barred the plaintiff's claim, reasoning that, given her allegations, the issue of whether the plaintiff suffered a physical injury was related to damages and causation and was unreviewable at the time. *Id*. at 943.

The physical injuries, including prolonged labor and the death of her otherwise

10

viable fetus, that Plaintiff in the instant case alleges she experienced as a result of the deprivation of her constitutional rights, far surpass the de minimis physical injuries of headaches, insomnia, and stomach anxiety alleged by the *Cannon* plaintiff.  They are dramatically, emphatically different from a bruised ear or delayed medical treatment that resulted in no discernible physical effects.  Unlike the *Jones* plaintiff, who alleged no physical injuries as a result of the delayed surgery for his tumors, and the *Leon* plaintiff, who alleged no adverse physical health effects resulting from the delayed receipt of medication for his HIV/AIDS, Plaintiff in this case alleges the delay and insufficiency of the medical treatment she received resulted in prolonged labor and the death of her fetus.  Indeed, in all of the cited cases where courts found the physical injury to be de minimis, the plaintiffs failed to allege they endured any lasting, detrimental physical effects, whereas in the case at hand, Plaintiff alleges the prolonged labor she endured resulted in the death of her fetus.  The tangible, physical effects in the matter at hand are undeniable, and, accordingly, should provide a sufficient basis for a cognizable claim, the PLRA notwithstanding.

In addition, the claimants in cases where courts found de minimis injuries did not allege they experienced any heightened or prolonged physical pain as a result of their de minimis injuries.  These facts readily distinguish the denied claimants from the Plaintiff in the case at hand, who alleges she experienced the pain of prolonged labor and the death of her fetus.  Just as the allegations of pain and suffering attendant to a heart attack constituted a physical injury sufficient to overcome the PLRA bar in *Sealock* and *Mata*,

the allegations in the case at bar of pain and suffering attendant to prolonged labor resulting in a stillbirth overcome the PLRA bar.

Indeed, the pain and suffering and physical effects alleged to have been endured by Plaintiff in this case were drastically more severe than that in *Sealock*.  In *Sealock*, no lasting physical damage was alleged to have accrued to the plaintiff as a result of prison officials' actions, as evidenced by the lack of medical evidence of damage to the heart, whereas in the instant case, Plaintiff alleges she experienced the death of her fetus and stillbirth as a result of prison officials' actions.  And yet, in *Sealock*, the plaintiff survived summary judgment, suggesting that on the facts presented, where Plaintiff experienced not only prolonged labor but also the death of her fetus and a stillbirth, summary judgment against her should be denied.  Accordingly, even more than in *Sealock*, where the plaintiff overcame the PLRA bar, Plaintiff demonstrates pain accompanied by tangible physical effects–not a heart attack without any lasting physical damage, but, significantly, the death of her otherwise viable fetus–sufficient to overcome the PLRA's bar.

Furthermore, these facts share obvious similarities with *Pool*, in which the court held that whether a miscarriage constituted a physical injury was not an "abstract issue of law," but was a material question of fact concerning damages or causation reserved for the fact-finder.  Similarly, in this case, the degree to which Plaintiff's miscarriage resulted in physical harm is a question of fact, not law, that must be reserved for the fact-finder, not dismissed on summary judgment for want of a showing of physical injury.  Indeed, in *Mitchell*, the court granted the plaintiff leave to amend his complaint when physical

injuries merely could be alleged to have resulted from the deprivation of food, sleep, and drink for four days, suggesting the dismissal of Plaintiff's claim here, when she has alleged prolonged labor and the death of her fetus, both of which undeniably have damaging physical consequences, would be inappropriate.

> **2.      Principles of tort law support the notion that actions causing prolonged labor resulting in the death of an otherwise viable fetus are properly construed as a physical injury to the mother.**

The PLRA contains no definition of the term "physical injury." 42 U.S.C. 1997e *et seq*. However, tort law can inform notions of what constitutes a physical injury under the PLRA. *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-1323 (S.D. Ind. 1997), *aff'd*, 133 F.3d 459 (7th Cir. 1997). Tort law suggests that miscarriage constitutes a physical injury to the mother. *See Jackson v. Kelly*, 557 F.2d 735, 739 (10th Cir. 1977) (recognizing a valid malpractice action arising out of negligent treatment for conditions relating to pregnancy while declining to grant official immunity to defendant military doctor); *and Schlesselman v. Gouge*, 163 Colo. 312, 315 (Colo. 1967) (finding for defendant, but having recognized a valid malpractice action when both the administration of a particular medication and a failure to treat an impending miscarriage were alleged to have resulted in the early-term loss of a fetus). Accordingly, principles of tort law suggest this Plaintiff has satisfied the PLRA physical injury requirement by alleging that prolonged labor resulted in the death of

her otherwise viable fetus.

The *Jackson* court, in considering whether to grant official immunity to a military doctor in the context of a medical malpractice case arising out of negligent treatment for conditions relating to pregnancy, declined to grant official immunity to the doctor after "balanc[ing] the consideration of harm to the individual citizen with the threat to effective government in the context of this case before granting or refusing to grant defendant official immunity." *Jackson v. Kelly*, 557 F.2d 735, 739 (10th Cir. 1977). The court reasoned that "the danger of suffering permanent bodily injury, disfigurement, and loss of future earnings is of at least equal gravity as damage to one's reputation. Medical malpractice may result in one's being made a cripple for life or even result in death. In sum, the danger to individual citizens from negligent medical care is substantial." *Id*. While the court's opinion included none of the facts upon which its opinion was based, its holding seemed to be founded on the presumption that allegations of negligent treatment for conditions relating to pregnancy would, in and of themselves, state an injury sufficient to sustain a medical malpractice action.

The *Schlesselman* court, while finding for defendant, did so in the context of a malpractice action wherein the plaintiffs alleged that the doctor's negligence "resulted in a failure to diagnose and treat Sarah's pregnancy, and in a failure to diagnose and treat the impending abortion at a time when it might still have been prevented." *Schlesselman v. Gouge*, 163 Colo. 312, 315 (Colo. 1967). It is safe to assume, then, the court found that, if proven, allegations of improperly administering or withholding medical treatment in a

14

manner that resulted in miscarriage, or, even more devastatingly, in the stillbirth of an otherwise viable fetus, constitute a compensable injury to the claimant mother.

Colorado and the Tenth Circuit are joined by a number of states and districts that have recognized the prolonged labor and miscarriage attendant to the loss of a fetus as a compensable injury.          In *Burgess v. Superior Court*, the California Supreme Court explicitly rejected the notion that an obstetrician providing medical services to a mother and her fetus could "physically injure one and not the other."  831 P.2d 1197, 1202 (Cal. 1992).  In *Burgess*, the plaintiff alleged that negligent medical treatment resulted in the deprivation of oxygen to her fetus for forty-four minutes before delivery, resulting in injuries to his brain and nervous system and ultimately causing his death one month later. *Id.* at 1199.  The *Burgess* court held that to state a cognizable claim, a physical injury is not required when a serious emotional injury has been alleged.  *Id.* at 1205.  However, the *Burgess* court found a physical injury had been alleged.  *Id.*  Because an injury to one is, necessarily, an injury to the other, the court reasoned, the failure of a mother to plead a physical injury more specific and egregious than one inflicted upon "her 'nervous system and person,'" when her fetus was alleged to have been fatally injured during delivery, was not a failure to state a cognizable claim for a physical injury to herself.  *Id.*

Similarly, the D.C. circuit has held that, particularly when a fetus is not independently viable, an "injury to the fetus is an injury to the mother."  *Brown v. Green*, 781 F. Supp. 36, 38 (D.D.C 1991).  The plaintiff in *Brown* experienced a prolonged pre-term labor that resulted in the premature birth and subsequent death of her pre-viable

15

twins. *Id*. at 37.  The *Brown* court reasoned that, "[T]he physical event of a miscarriage at the stage of Ms. Brown's pregnancy may in itself be considered a physical harm that could place Ms. Brown in the zone of danger,"and found that the nature and extent of the physical injuries accruing to a mother when her fetus allegedly dies as a result of negligent medical treatment are questions for the trier of fact.  *Id*. at 39.

Indeed, the pain of prolonged labor has been held to constitute a physical injury in and of itself.  *Daniel v. Jones*, 39 F. Supp. 2d 635, 647 (E.D. Va. 1999).  As in *Brown*, the plaintiff in *Daniel* experienced the premature birth and subsequent death of her pre-viable twins after a prolonged pre-term labor and delivery.  *Id*. at 637.  In her complaint, the *Brown* plaintiff alleged she had suffered "great pain of body and mind," but had not specifically alleged other physical injuries.  *Id*. at 644.  In denying the defendants' motion for judgment as a matter of law, the *Daniel* court reasoned a jury could reasonably return a verdict for plaintiff on a physical injury claim arising out of the miscarriage when "plaintiff was in excruciating pain for days before her ultimate delivery."  *Id.* at 647.

Even those courts that declining to hold a miscarriage or still birth is a de facto injury to the mother have suggested miscarriages and stillbirths are in a class of their own and should be recognized as compensable injuries to the mother regardless of the presence or absence of any physical injury allegation.  *Tanner v. Hartog*, 696 So. 2d 705, 707 (Fla. 1997) (citing decisions from New Jersey, California and North Carolina).  In addressing the question of whether a miscarriage satisfies the impact rule's physical injury requirement, the *Tanner* court considered lower courts' reasoning that a fetus "is living

16

tissue of the body of the mother for the negligent or intentional tortious injury to which the

mother has a legal cause of action the same as she has for a wrongful injury to any other

part of her body." *Tanner*, 696 So. 2d at 706.  Under Florida's impact rule, a plaintiff

states a claim for emotional damages only if those damages flow from a physical injury.

*Id*. at 707.  The *Tanner* court reasoned that characterizing the fetus as "living tissue of the

mother" was merely a "clever mechanism to satisfy the impact rule." *Id*.  Nevertheless, the

court reasoned the claim should survive; accordingly, it held its impact rule is inapplicable

to claims for emotional distress for stillbirth, because this narrow class of claims is

deserving of special accommodation.  *Id*. at 708.

**3.    Common sense dictates a plaintiff has satisfied the PLRA's physical injury requirement when she alleges mistreatment resulted in prolonged labor and the death of her otherwise viable fetus.**

An additional basis, along with recognizing a unique class of claim deserving of

special accommodation, supports the recognition that allegations that prolonged labor

resulted in the death of an otherwise viable fetus state a compensable claim, the PLRA's

physical injury requirement notwithstanding.  The Second Circuit, addressing the question

of whether an emotional injury claim arising out of an alleged sexual assault was properly

dismissed for lack of showing a prior "physical injury" under the PLRA, endorsed a

"common sense" approach that seems wholly appropriate here.  *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999).  Plaintiff had not explicitly alleged a "physical injury" arising out of sexual assaults experienced in prison.  *Id.* at 134.  But the court reasoned, "Nevertheless, accepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense.  Certainly, the alleged sexual assaults would constitute more than de minimis injury if they occurred."  *Id.* at 135. Under the Second Circuit's common-sense approach, allegations that a deprivation of medical care resulted in prolonged labor and the death of a mother's otherwise viable fetus undoubtedly satisfy the PLRA's prior physical injury requirement as much as allegations of a sexual assault do.  The negative effects on Plaintiff's physical well-being that resulted from prolonged labor and subsequent death and stillbirth of her fetus are surely comparable to, if not potentially more physically injurious than, a sexual assault. As it did in *Liner*, common sense dictates Plaintiff's claim should survive the PLRA's bar.

**B.**     **Although the Tenth Circuit has held the PLRA bars constitutional claims, as well as mental and emotional injury claims, without a prior showing of physical injury, that holding does not apply when the alleged deprivation of constitutional rights resulted in prolonged labor and the death of an otherwise viable fetus.**

Because I can find the PLRA's physical injury requirement has been satisfied when

a plaintiff alleges a deprivation of medical treatment that resulted in prolonged labor and the stillbirth of her otherwise viable fetus, I need not reach the constitutional issues in the matter at hand.  "It is... an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground." *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (U.S. 1999) (*citing United States v. Raines*, 362 U.S. 17, 21, 4 L. Ed. 2d 524, 80 S. Ct. 519 (1960)); *see also United States v. Vanness*, 342 F.3d 1093, 1098 (10th Cir. 2003) ("Federal courts should avoid reaching the merits of a constitutional issue when the case may be decided on [other] grounds") (*citing ANR Pipeline Company v. Lafaver*, 150 F.3d 1178, 1186 n.8 (10th Cir. 1998)).  Nevertheless, if I were required to reach the constitutional issues in the matter at hand, I still would find that the PLRA would not bar the claim.

The Tenth Circuit has held the plain language of the PLRA bars all damages based on claims of mental or emotional injury without a prior showing of physical injury, regardless of the nature of the underlying right asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) ("The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted.").  The Tenth Circuit rule is contrary to that of other circuits holding when a claim addresses the deprivation of a constitutional right rather than a mental or emotional injury, the PLRA's physical injury requirement does not apply. *See Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) ("§ 1997e(e) applies only to claims for mental or emotional injury.  Claims for other

types of injury do not implicate the statute...A deprivation of First Amendment rights standing alone is a cognizable injury."); *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998) (First Amendment claim not barred by the PLRA, despite absence of physical injury); *and Auleta v. LaFrance*, 233 F.Supp.2d 396, 402 (N.D.N.Y. 2002) (distinguishing a claim for a violation of First Amendment rights, to which the physical injury requirement of 42 U.S.C. § 1997e(e) does not apply, from a claim for mental or emotional injury).  The *Searles* court reasoned that to follow the logic of those courts that have allowed damages claims founded on constitutional rights while denying other claims resulting in mental and emotional injuries would make the applicability of the PLRA entirely dependent upon the nature of the plaintiff's allegedly infringed rights.  *Searles*, 251 F.3d at 876.  The court found this approach to be inconsistent with the PLRA because, it reasoned, the underlying substantive violation cannot be divorced from the resulting injury, and the statute was designed to set "limits [on] the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."  *Id*.

The Tenth Circuit has explicitly and repeatedly held violations of the Eighth Amendment need not result in physical injury to create a cognizable claim.  *See Despain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) ("On a more general level, this court has held that 'the Eighth Amendment may be implicated not only [by] physical injury, but also by the infliction of psychological harm.'") (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001)); *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001)  ("the Eighth Amendment may be implicated not only [by] physical injury, but also

20

by the infliction of psychological harm."); *and Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980) (holding that delay in providing medical care which resulted in "continued and unnecessary pain," but no physical injury, violated the Eighth Amendment's deliberate indifference standard).   Nevertheless, the Tenth Circuit extended *Searles* to Eighth Amendment claims, holding that the PLRA bars claims for damages for mental and emotional injuries arising out of Eighth Amendment violations absent a prior showing of physical injury.  *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 ("As an initial matter, however, we must consider the effect of the limitation provisions of 42 U.S.C. § 1997e(e) on plaintiff's claims.").

Of central importance to the *Searles* and *Perkins* courts' holdings, however, is the notion that while claims for damages are precluded by the PLRA, other forms of relief remain available.  *Searles*, 251 F.3d at 876 ("damages may be unavailable for constitutional violations where Congress has provided an alternative set of remedies") (citing *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998)); *Perkins*, 165 F.3d at 808 (holding "it is not clear that a claim for either punitive or nominal damages would also be barred;" also noting the availability of injunctive relief); *and Eagle Thunder v. Gunja*, 2005 U.S. Dist. LEXIS 37799 (D. Colo. 2005) (holding the PLRA bars claims for compensatory damages, "but does not affect claims for nominal damages, punitive damages, and declaratory or injunctive relief.") (citing *Searles*, 251 F.3d at 879-81 (10th Cir. 2001) and *Perkins*, 165 F.3d at 808 (10th Cir. 1999)).  Accordingly, the *Searles* court reasoned, "[T]he restriction on damages of 42 U.S.C. § 1997e(e) does not violate

plaintiff's right of access to the courts or otherwise run afoul of constitutional restrictions." *Searles*, 251 F.3d at 877.  The court also supported its conclusion that the PLRA's damages bar was constitutional by reasoning that, "The Constitution does not demand an individually effective remedy for every constitutional violation." *Id*. at 876.

At issue in *Searles* was an award of compensatory and punitive damages to the plaintiff arising out of the prison's four-and-half-month-long failure to provide him with a kosher diet. *Searles*, 251 F.3d at 873-874.  The *Searles* court held that, without a prior showing of physical injury arising from the deprivation of the kosher diet, damages for mental and emotional injuries arising from the deprivation were barred by the PLRA. *Id*. at 877.  Because a jury had not found by a preponderance of evidence that the plaintiff had suffered a physical injury at the defendants' hands, the claim for emotional damages failed. *Id*. at 875.  In *Perkins*, the plaintiff, who had AIDS, claimed he suffered emotional injuries because he was required to wear a face mask after having spit on prison officials. *Perkins*, 165 F.3d at 806.  In addition, he claimed he sustained emotional and physical injuries attendant to a nine-month-long deprivation of physical exercise and the decision of prison medical personnel to prescribe AIDS medications that did not include a drug the plaintiff believed he should be receiving. *Id.* at 806-807.  The *Perkins* court concluded that even if damages were barred by the failure to demonstrate an adequate physical injury, a determination it remanded to the district court to make, injunctive relief might still remain available to the plaintiff. *Id*. at 807-808.

In the matter at hand, because the damage inflicted by the alleged violation is

terminal and irreversible, and because no relief, if not damages, is available to Plaintiff,

who is no longer incarcerated, the PLRA should not operate to bar her claim.  It was of

central importance to the *Searles* court that, although damages were barred, other forms of

relief were available to the plaintiff, should his claim succeed.  Because that is not the

case here, the PLRA should not operate to bar damages.  It is true the *Searles* court found

the Constitution does not require an individually effective remedy for every constitutional

violation; however, it so found in the context of the failure to comply with a dietary

restriction that had no ill effects on a plaintiff's health.  It is inconceivable that the *Searles*

court would intend such reasoning to apply directly in circumstances in which the

constitutional violation resulted in the more egregious, permanent, and, indeed, lethal

physical effects of prolonged labor, the death of a fetus, and stillbirth.

   Indeed, the nature of the claim the Tenth Circuit found to be barred by the PLRA in

*Searles* was much less egregious in both kind and degree.  The *Searles* decision cannot be

construed to apply to the distinctly inapposite facts in the case at bar.  In fact, even in

*Searles*, where the claim was denied, the question of whether the plaintiff sustained a

physical injury had gone to the jury.  And in *Perkins*, the court remanded to the district

court after it found that the plaintiff could conceivably make a sufficient showing of

physical injury in those far less inhumane circumstances.

   Accordingly, because this matter is so readily distinguishable, with facts indicating

such clear physical effects, and because no other remedy would be available to Plaintiff if

the PLRA were allowed to bar damages, it is well within the bounds of Tenth Circuit

precedent to find that constitutionally the PRLA may not operate to bar the claim of a woman who alleges the deprivation of proper medical treatment resulted in prolonged labor and the death and stillbirth of her fetus.

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 29) is **DENIED**.  Plaintiff's Motion To Recognize the Constitutional Rights of Prison Inmates (Doc. 42) is **DENIED** as **MOOT.**  I regret the delay in ruling on these motions.  This case will be set for a forthwith pretrial conference by separate Minute Order.

Dated this 8th day of March, 2006, at Denver, Colorado.

**s/John L. Kane**
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE