IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 00-cv-02555-JLK

**PAMELA CLIFTON**,

       Plaintiff

v.

**NURSE ILONA EUBANK**, in her individual capacity;
**OFFICER DAWN ANAYA**, in her individual capacity; and
**OFFICER IRA WILKS**, in his individual capacity,

       Defendants.

---

MEMORANDUM OPINION AND ORDER

---

KANE, J.

Plaintiff Pamela Clifton brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983. The action arises out of Plaintiff's allegations that Defendants Anaya, Wilks and Eubanks' conduct resulted in her prolonged labor and the subsequent stillbirth of her otherwise viable fetus. Plaintiff alleges violations of her Eighth and Fourteenth Amendment rights and intentional infliction of emotional distress/outrageous conduct (IIED).

Before me is Defendants' motion for summary judgment. This ruling is limited to the issues unaddressed in previous orders. *See Clifton v. Eubank*, 418, F. Supp.2d 1243 (D. Colo. 2006)(rejecting assertion that Prison Litigation Reform Act bars Plaintiff's claim) *and* Order dated April 5, 2006 (Doc. 79)(denying Motion for Certification for Interlocutory Appeal). Defendants' remaining summary judgment issues are: (1) Plaintiff

1

cannot state a claim under 42 U.S.C. § 1983 because she does not assert a violation of her constitutional rights; (2) each Defendant is entitled to qualified immunity; (3) Defendants' actions do not reach the high threshold of extreme and outrageous conduct; and (4) Plaintiff failed to perfect her state tort claims against Defendant Eubank under Colorado's Governmental Immunity Act, C.R.S. § 13-20-602 (2001).

## BACKGROUND

For purposes of the summary judgment motion, I assume the following facts to be true unless otherwise stated. On the morning of December 25, 1998, Pamela Clifton, an inmate housed by the Colorado Department of Corrections at the Women's Correctional Facility in Canon City, Colorado, went into labor. Compl. at ¶ 1; Pl.'s Resp. to Def.'s Mot. for Summ. J., Exhibit 1 (Clifton Deposition 11/13/2001) [hereinafter "Clifton Dep."] 19:1-3. At the time, Clifton was approximately eight months pregnant. Clifton Dep. 36:5-7. At an appointment with Dr. Mark Sindler four days earlier, Sindler had reported Clifton's pregnancy was proceeding normally. *Id.* at 35:3-9.

Clifton experienced her first contraction on December 25, 1998 at 10:55 a.m. Clifton Dep. 23:7-8. Upon experiencing contractions, Clifton asserts that she told Defendant Officer Anaya, a guard at the correctional facility, that she was in labor and needed medical assistance. Clifton Dep. 19:1-3. Defendant Anaya did not send Clifton to the medical facility, allegedly because the guards were doing a head count and all inmates had to be in their living quarters. Clifton Dep. 19:3-5; Taylor Dep. 7:25 – 8:11. Defendant Anaya told Clifton she could use the bathroom. Clifton Dep. 19:3-5; Taylor Dep. 7:25 – 8:11.

Clifton could not simply go to the medical facility because inmates were prohibited from doing so and had to seek and obtain permission from an officer first. Anaya Dep. 10:21 – 11:1.  A note on the medical facility door said, "If you knock on this door, you will receive a write-up." Yacklich Dep. 9:6-10.

Around lunchtime, Clifton's contractions were five minutes apart.  Clifton Dep. 25:15-20.  She then told Defendant Wilks, another guard at the correctional facility, that she was in labor and needed help. *Id.* at 16:25 – 17:4.  Instead of providing her with medical assistance, Clifton alleges Defendant Wilks told her to get back to her unit because "there's plenty of women down there that know how to birth babies." *Id.* at 17:4-7, 26:1-3; Clifton Aff. ¶ 4; Taylor Dep. 13:5-13; Mickey Dep. 9:8-14.

At 6:30 p.m., upon Clifton's third request for medical assistance, a fellow inmate obtained permission from another prison guard to send Clifton to the prison's medical facility.  Comp. at ¶ 1; Clifton Dep. 29:2-5, 30:7-1, 31:24 – 32:8.

At the medical facility, Defendant Nurse Eubank examined Clifton.  Defendant Eubank's notes from that evening state, "Clifton in for possible labor pains, infrequent." Eubank Dep. 34:19 – 35:24.  DOC policy is that any time an inmate goes into labor she is sent to the hospital.  Upon examination, Defendant Eubank reported finding no evidence of any amniotic fluid.  Clifton Dep. 32:20-21.  Clifton states she informed Defendant Eubank that her water never breaks and that she always has to have it broken (Clifton has two other children).  Clifton Dep. 32:21-23.

Defendant Eubank also did not use a fetal heart monitor to evaluate the status of Clifton's fetus, because, according to Clifton, Eubank did not know how to use the

3

monitor.[1]  Clifton Dep. 32:24 – 33:1.  During the examination, Clifton requested Defendant Eubank use the fetal heart monitor.  According to Clifton, Defendant Eubank took out the monitor and attempted to use it.  Clifton Dep. 120:21 – 121:16.  Clifton avers that Defendant Eubank told her she lacked any prenatal training and did not know how to use the heart monitor.  Clifton Dep. 121:24 – 122:4.

In addition to checking for amniotic fluid and unsuccessfully attempting to use the heart monitor, Defendant Eubank purportedly touched Clifton's stomach and felt a contraction.  Clifton Dep. 122:12-13.

Despite all this information, Defendant Eubank called Clifton's labor a "false alarm."  Clifton Dep. 33:4.  Instead of sending Clifton to the hospital, as per DOC policy, Defendant Eubank sent Clifton back to her unit.  Clifton Dep. 33:4-5.  Defendant Eubank allegedly did not want to bother anyone at the hospital with a "false alarm."  Clifton Dep. 33:2-4.

Clifton's contractions had stopped by midnight that night.  Clifton Dep. 46:19-20.

On the evening of December 26, 1998, Clifton saw Defendant Eubank and informed her of sensing no fetal movement.  Defendant Eubank had a physician's assistant come to the prison's medical facility and examine Clifton.  Upon finding no fetal heartbeat, the physician's assistant sent Clifton from the prison medical facility to the

---

[1] Other than Clifton's deposition, the parties did not provide the court with any evidence to the contrary.  The portions of Defendant Eubank's deposition testimony, attached as Exhibit 7 to Plaintiff's Response to Defendants' Motion for Summary Judgment, did not include questioning regarding Eubank's ability to use a fetal heart monitor.

hospital. There it was determined that Clifton's fetus was dead. Clifton was required to undergo a stillbirth.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, evidence is viewed, and reasonable inferences may be drawn therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). For the purpose of the instant motion, I will construe all of the evidence presented in the light most favorable to Clifton as non-moving party.

### B. Qualified Immunity

Qualified immunity is an affirmative defense against claims brought under 42 U.S.C. § 1983. Once a defendant government official raises the defense of qualified immunity, the burden shifts to the plaintiff to disprove the applicability of the defense. The plaintiff bears a heavy two-part burden when a defendant asserts the defense of qualified immunity. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

First, the plaintiff must demonstrate each individual defendant's conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1792-94,

114 L.Ed.2d 277 (1991).  This burden means coming forward with specific facts establishing the violation.  *Harris v. Morales*, 69 F.Supp.2d 1319, 1323 (D. Colo. 1999) (Kane, J.).  A plaintiff suing public officials in their individual capacities must establish specific facts showing the personal involvement of each named individual defendant.  *Id.* Conclusory, non specific, and generalized allegations of constitutional deprivations are not sufficient.  *Id.*

Second the plaintiff must prove the relevant law was clearly established when the alleged violation occurred.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The federal law need not be "materially similar" to the facts of the instant case.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  We should look to see if there was "a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains."  *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1338 (10th Cir. 2000) (quoting *Murrell v. School Dist. No. 1, Denver,* 186 F.3d 1238, 1251 (10th Cir. 1999)); see also *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992).  The essential issue is whether the official had "fair warning" that her conduct was violating federal law.

6

1. Violation of Constitutional Right

The treatment a prisoner receives in prison and the conditions under which she is confined are subject to scrutiny under the Eighth Amendment of the United States Constitution. *Farmer v. Brennan*, 511 U.S. 825, 831 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 831 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The Supreme Court considers prison officials' "deliberate indifference" to a prisoner's "serious medical needs" to deprive the prisoner of his rights under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

I accept that pregnancy labor is a sufficiently serious condition requiring medical care. "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citations omitted). Although a physician might not always diagnose pregnancy labor as requiring medical treatment, I find, however, that any lay person would recognize the obvious need a woman in labor has for a doctor's attention.

Deliberate indifference is equivalent to recklessness. *Farmer*, 511 U.S. at 836. The standard requires a showing that the official had actual knowledge of the risk of harm and disregarded that risk. *Id.* at 837. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* The

7

*Farmer* court also stressed that actual knowledge of substantial risk of harm is a question of fact that may be inferred from circumstantial evidence, including the obviousness of the risk. *Id.* at 842.

Our cases recognize two types of conduct constituting deliberate indifference to the serious medical needs of a prisoner. *Sealock*, 218 F.3d at 1211. First, a medical professional may fail to treat a serious medical condition properly. *Id.* Second, deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny her access to medical personnel capable of evaluating the need for treatment. *Id.*

Assuming all of Clifton's allegations to be true, I rule that a reasonable juror could find each Defendant was deliberately indifferent to Clifton's serious medical needs, thus violating her Eighth Amendment constitutional rights.

### a. Defendants Anaya and Wilks

Clifton alleges that Defendants Anaya and Wilks' refusal to provide her with access to medical care was a violation of her Eighth Amendment rights.

Defendant Anaya testified that she knew Clifton was pregnant. Anaya Dep. 9:18-21. Though Defendant Wilks claimed not to have known about Clifton's pregnancy, Wilks Dep. 36:9-1, Clifton's deposition testimony asserts otherwise, *see* Clifton Dep. 16:25 - 17:7. For purposes of this motion, I accept that Defendants Anaya and Wilks knew Clifton was pregnant.

When dealing with a pregnant woman DOC procedures are undisputed. Whenever a pregnant woman requests medical attention, an officer is required to send her to the medical facility. *See* Anaya Dep. 10:10-20; Wilks Dep. 40:13-18, 45:8 - 46:1. Even if a

8

prison officer lacks medical training, a reasonable person recognizes the serious risks inherent in a pregnancy. The medical facility personnel determine whether a pregnant woman needs help, not the officer. Furthermore, because inmates allegedly were prohibited from going to the medical clinic without prior authorization from an officer, Clifton had no alternatives for obtaining medical care.

Defendant Anaya's actions fall under the second type of conduct constituting deliberate indifference. Clifton claims she told Defendant Anaya that she was in labor. Instead of sending her to the medical facility, Defendant Anaya told Clifton she needed to stay in the living quarters, but that she could go to the bathroom. Defendant Anaya alleges that she did not send Clifton to the medical facility because the prison guards were doing a head count and everyone had to be in their living quarters. Defendant Anaya's reason does not excuse her conduct because she could have sent Clifton to the medical facility after the prison guards had finished the head count or interrupted the count on an emergent basis. Defendant Anaya prevented Clifton from receiving treatment and denied her access to medical personnel capable of evaluating the need for treatment.

Defendant Wilks' actions also fall under the second type of conduct constituting deliberate indifference. Clifton alleges she told Defendant Wilks that she was in labor and needed help. Instead of sending her to the medical facility, Defendant Wilks sent Clifton back to her unit because "there's [sic] plenty of women down there that know how to birth babies." Construing the facts in the record in the light most favorable to Clifton, Defendant Wilks' conduct amounted to deliberate indifference to Clifton's

9

serious medical needs because she prevented Clifton from receiving treatment and denied Clifton access to medical personnel capable of evaluating the need for treatment.

Defendants Anaya and Wilks assert that Clifton failed to show a proximate causal link between their inaction and the alleged deprivation of Clifton's rights. Whether or not Defendants' actions were the proximate cause of the stillbirth is not dispositive. The Tenth Circuit recognizes that officials' delay in providing medical care, which resulted in "continued and unnecessary pain," violated the deliberate indifference standard. *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980). I find that there is factual evidence in the record from which a jury could conclude that Defendants Anaya and Wilks' inaction unnecessarily prolonged Clifton's pain and suffering.

Construing all inferences in the light most favorable to Clifton, I find sufficient evidence in the record from which a reasonable juror could conclude that Defendants Anaya and Wilks had actual knowledge of Clifton's risk of harm. A reasonable juror could further conclude that by failing to send Clifton to the medical facility, Defendants Anaya and Wilks disregarded the risk Clifton faced and deprived her of the right to be protected from deliberate indifference to her serious medical needs.

For the foregoing reasons, I conclude Defendants Anaya and Wilks are not immune from suit and allow Clifton's § 1983 claim against them to proceed to trial.

### b. Defendant Eubank

Clifton alleges Defendant Eubank's failure to conduct a thorough examination and failure to send Clifton to the hospital was a violation of her Eighth Amendment rights. Defendant Eubank initially refused to acknowledge that she had treated Clifton and

testified that she only remembered meeting Clifton the night she sent her to the hospital. Eubank Dep. 12:13-17. Only after being presented with the Nursing Communication Book did Defendant Eubank admit that she treated Clifton on December 25, 1998. *Id.* at 34:8 – 35:24. Defendant Eubank's notes from that night state that Clifton was "in for possible labor pains." At her deposition, Defendant testified, "women in DOC who are in labor are transported to the hospital." Eubank Dep. 21:8-9. Despite her notation and DOC policy, Defendant Eubank did not send Clifton to the hospital. From what I can deduce, Defendant Eubank believed Clifton was in "false labor" because she did not see any amniotic fluid. Clifton, however, informed Defendant Eubank that her water never breaks and requested Defendant Eubank check the fetal heart tones. Defendant Eubank attempted to use the fetal heart monitor, but lacking prenatal training, she did not know how to use it. Clifton Dep. 121:24 – 122:4. Coupled with her less than forthcoming manner regarding treating Clifton, Defendant Eubank's actions give rise to an inference of deliberate indifference because she failed to treat Clifton properly and/or because she denied Clifton access to medical personnel capable of evaluating the need for treatment.

Defendant Eubank asserts that her conduct amounted, at best, to negligence. "Negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06.

I find that a reasonable juror could conclude Defendant Eubank's conduct surpassed negligence and reached a level of recklessness, or deliberate indifference. Our facts are similar to those in *Coleman*, 114 F.3d 778 (8th Cir. 1997), where the defendant nurse delayed in sending the inmate to the hospital causing "a great deal of fear and

11

physical suffering." *Id.* at 787. The nurse, in that case, after conducting an examination and monitoring the fetal heart tones, noted that the inmate was in "possible early labor." *Id.* at 782-83. Despite this notation, the nurse sent the inmate back to her unit. *Id.* at 783. The court found that upon noting that the inmate was in "possible early labor," any layperson would have recognized the necessity for a doctor's attention and, thus, the nurse should have sought further assistance for the inmate. *See id.* at 785. The court further ruled that the nurse had actual knowledge of the inmate's medical risk based on the obviousness of the serious medical need and the inmate's well-documented medical history. *Id.* at 786. Similarly in our case, upon noting that Clifton was in "possible labor," Defendant Eubank should have sent Clifton to the hospital for proper medical attention. This conclusion is even stronger in our case if Defendant Eubank knew she lacked the training to operate the fetal heart monitor. While the nurse in *Coleman* knew about the inmate's medical risk from the well-documented medical history, Defendant Eubank knew about Clifton's medical risk because Clifton allegedly informed her of her previous pregnancy complications. In addition, the facts here are strong for finding deliberate indifference because, unlike the nurse in *Coleman* who did not feel any contractions, Defendant Eubank allegedly felt one of Clifton's contractions.

      Construing all inferences in the light most favorable to Clifton, I find sufficient evidence from which a reasonable juror could conclude that Defendant Eubank had actual knowledge of Clifton's risk of harm and that she disregarded that risk.

      For the foregoing reasons, I conclude Defendant Eubank is not immune from suit and allow Clifton's § 1983 claim against her to proceed to trial.

## 2. Clearly Established Law

After finding sufficient evidence from which a reasonable juror could conclude that defendants' actions constituted a violation of Clifton's Eighth Amendment rights, I now look to whether the law was "clearly established" when the violation occurred. I find Clifton's Eighth Amendment right to be free from deliberate indifference to her medical needs was clearly established on December 25, 1998 so that a reasonable official would understand that what she is doing violated that right.

The following cases provided Defendants with "fair warning" that their conduct constituted a violation of federal law. In *Estelle*, a 1976 decision, the Court proscribed prison officials from exhibiting "deliberate indifference to the medical needs of prisoners." 429 U.S. at 104. The Tenth Circuit in 1980 further held that delay in providing medical care that resulted in "continued and unnecessary pain" violated the deliberate indifference standards of *Estelle*. *Ramos*, 639 F.2d at 576. There are also sufficient cases holding that an officer's delay in providing medical treatment to a pregnant inmate constitutes deliberate indifference to the inmate's medical needs, thus violating Eighth Amendment rights. *See Boswell v. County of Sherburne*, 849 F.2d 1117 (8th Cir. 1988) (holding that prison officials' refusal to provide pregnant inmate with medical attention until she paid bail was a violation of the inmate's clearly established right to medical care); *Archer v. Dutcher*, 733 F.2d 14 (2nd Cir. 1984) (holding that a pregnant inmate who miscarried stated a cognizable claim where she alleged that defendant prison officials intentionally delayed emergency medical aid).

Most importantly, however, I find that DOC procedures provided Defendants with "fair warning" that a prison official's delay in providing medical assistance would violate clearly established law.

For the aforesaid reasons, I find that Clifton has adduced sufficient evidence to negate Defendants Anaya, Wilks and Eubank's defense of qualified immunity under a summary judgment standard.

### C. Plaintiff Clifton's Claim is Based on a Violation of Her Own Constitutional Rights

A 42 U.S.C. § 1983 claim must be based upon the violation of a plaintiff's personal rights, and not the rights of someone else. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). The qualified immunity analysis above and my ruling in *Clifton v. Eubank* combine to refute Defendants' suggestion that Clifton is pursuing no constitutionally cognizable rights of her own. There is sufficient evidence in the record from which a reasonable juror could infer that Clifton's constitutional right against deliberate indifference to *her* serious medical needs has been violated and that *she* suffered compensable damage as a result.

In their motion, Defendants contend Clifton alleges no injury to herself other than discomfort related to the normal experience of child- or stillbirth. Their argument is in effect a request for reconsideration of my Memorandum Opinion and Order discussing the PLRA physical injury requirement. Defendants contend the tort law cases on which I relied are misplaced because "section 1983 must not be used to duplicate state tort law on the federal level." *Medina v. City and County of Denver*, 960 F.2d 1493, 1495 (10th Cir.

1992) (citation omitted). The citation is inapt and the legal principle forwarded, which derives from the Rehnquist Court's efforts to rein in abuses of § 1983, is grossly disingenuous in this case. *See Parrat v. Taylor*, 451 U.S. 527 (1981)(loss of a $23.50 hobby kit by prison mail system does not rise to the dignified level of a constitutional violation). While it is indeed true that not all torts rise to the level of constitutional deprivations, I stand by my analysis that the misconduct alleged by Clifton in this case, for which she has presented colorable evidence, does. At issue is the loss of an otherwise viable fetus as a result of the deliberate indifference of Defendants, not the loss of a $23.50 hobby kit. The comparison, however unintended, is only somewhat short of outrageous.

The PLRA's "Limitation on Recovery" provides only that "[n]o Federal civil action shall be brought by a prisoner … without a prior showing of physical injury." 42 U.S.C. § 1997e(e). There is nothing in this language to indicate that courts may not look to principles of tort law to satisfy the physical injury requirement. *See Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind. 1997, *aff'd*, 133 F.3d 459 (7th Cir. 1997)(courts may apply state tort law in assessing PLRA's physical injury requirement).

As my analysis on the qualified issue makes clear, Plaintiff Clifton has shown sufficient evidence from which a reasonable juror could infer a violation of her Eighth Amendment constitutional right.

### D. Outrageous Conduct

Defendants next contend that Clifton fails to demonstrate that any conduct by any of the individual Defendants rises to the level of extreme and outrageous conduct.

15

The tort of outrageous conduct causing severe emotional distress was adopted by the Colorado Supreme Court in *Rugg v. McCarty*, 476 P.2d 753 (Colo. 1970). The elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. Ct. App. 2002), *aff'd* 90 P.3d 228 (Colo. 2004).

The level of outrageousness required to create liability is extremely high. The defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct. *Grandchamp v. United Air Lines*, 854 F.2d 381, 383 (10th Cir. 1998). Although the jury decides the ultimate question whether the conduct is outrageous, the court first determines whether the issue should be submitted to the jury based on whether reasonable people could differ on the conduct being outrageous. *Id.* Construing the evidence in the record in the light most favorable to Clifton, Defendants Anaya, Wilks and Eubank have not persuaded me that reasonable minds would not differ as to whether their actions, denying Clifton proper medical care when she was pregnant and claims to have had labor pains, amounted to outrageous conduct.

### E. Certificate of Review

Defendants next assert that Plaintiff Clifton's state tort claim, namely, the outrageous conduct claim, must be dismissed because she failed to file a certificate of

review as required under Colorado law.  Plaintiff Clifton is not required to file such a certificate on an outrageous conduct claim.

Colo. Rev. Stat. § 13-20-602(1)(a) provides that,

> in every action for damages or indemnity based upon the alleged professional negligence of … a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each … licensed professional named as a party … within sixty days after the service of the complaint … .

The § 13-20-602 certificate of review by its terms applies only to professional negligence claims.  Although Defendant Eubank asserts that her conduct only amounted to negligence, a claim of outrageous conduct requires a showing of specific intent or that the defendant acted recklessly.  Negligence would not support recovery on a claim of outrageous conduct because that is not the necessary mens rea of the tort.

I find that Plaintiff Clifton's failure to file a certificate of review pursuant to § 13-20-602 does not mandate dismissal of the outrageous conduct claim against Defendant Eubank.


Defendants' Motion for Summary Judgment is DENIED.  This case shall be set for pretrial conference forthwith.  If, in the interim, the parties determine a referral to a magistrate judge for settlement purposes is appropriate, either side may notify chambers and referral will be made.

Dated December 18, 2006.                    s/John L. Kane
                                            SENIOR U.S. DISTRICT JUDGE